MIRIAM MANDEL et al., Plaintiffs, *v.* HARRY WAXMAN et al., Defendants.

Supreme Court, Special Term, Queens County, October 4, 1961.

*Goodman & Mabel* (*Michael M. Kirsch* of counsel), for plaintiffs. *Golenbock & Barell* (*Seymour Shainswit, Leonard W. Wagman* and *Arnold Raynor* of counsel), for defendants.

HAROLD TESSLER, J. In this action for a declaratory judgment, plaintiffs move for summary judgment and defendants cross-move for the same relief.

The complaint alleges in substance as follows: On or about June 10, 1960, plaintiffs as landlord and defendants as tenant entered into a 30-year lease, the term to commence on July 1, 1960, and terminate on June 30, 1990, with options to the tenant to renew for four successive terms of 17 years each. The parcel of real property involved is a rectangular plot, 175 feet by 200 feet, which is located on the southeast corner of Cross Bay Boulevard and 157th Avenue in this county and which is for some 90 feet bounded on the south by Shell Bank Basin. Under the lease, defendants agreed to construct a commercial building costing not less than $200,000 and containing not less than 25,000 square feet of inside floor area on two floors; to exhibit a final certificate of occupancy for the completed building issued by the " appropriate municipal department " on or before January 1, 1962; and to pay for the cost of constructing said building within 60 days after issuance of that certificate (lease, § 4.01). Defendants were to obtain all municipal and other governmental permits and authorizations and the plaintiffs agreed to join in applications therefor (*id.*, § 4.03). Defendants were not to allow the premises to be used or occupied for any unlawful purpose or in violation of any " certificate of occupancy or

certificate of compliance " (*id.*, § 14.01). Defendants were not to be released from their personal obligations under the lease until the building was completed and paid for and the time for the filing of liens had expired (*id.*, § 36.05).

Thereafter, continues the complaint, defendants constructed a two-story building for use as a bowling alley and accessory restaurant. Defendants did not apply to the Department of Housing and Buildings of the City of New York for the issuance of a building permit and did not file plans for said construction with and obtain the approval thereof from said department, as required by section C26–161.0 of the New York City Administrative Code and in violation of sections C26–174.0 and C26–178.0 of that code and section 645 (subd. b, par. [1]) of the New York City Charter. Instead, construction was performed pursuant to plans filed with and approved by the Department of Marine and Aviation of the City of New York which issued to defendants a " Certificate of Completion " dated March 1, 1961, stating in part that " it is hereby permitted to occupy said structure for the use of bowling alley and accessory restaurant subject to compliance with all the requirements and regulations of the Fire Department and other City, State and Federal Departments." From that date on, defendants occupied and used the building for the purposes stated.

The complaint then asserts defendants' position that they have fully complied with the lease and that no building permit or certificate of occupancy had to be obtained from the Department of Housing and Buildings; the contrary position asserted by the plaintiffs, and the consequent existence of a justiciable controversy. An additional reason for the necessity of a declaratory judgment is advanced in paragraph 18 of the complaint, to wit, that under the new Zoning Resolution of the City of New York, effective December 15, 1961, the use of a bowling alley is limited to 16 lanes while the bowling alley constructed by defendant has 48 lanes. Consequently, if a building permit and certificate of occupancy must be obtained from the Department of Housing and Buildings, as plaintiffs contend, then the building containing 48 lanes will not be lawful under the new Zoning Resolution and no certificate of occupancy can issue thereunder unless an application for a building permit is made under section 11–11 of the new resolution not later than 60 days before its effective date, i.e., on or before October 15, 1961, in which event such permit may be issued and construction of the building completed under the old zoning ordinance.

Plaintiffs seek a judgment declaring, among other things, that defendants are required by law and the lease to apply for and

obtain a building permit and certificate of occupancy from the Department of Housing and Buildings.

The answer consists of general and specific denials, six affirmative defenses and a counterclaim. The defenses allege in substance as follows: the first, that defendants have fully performed under the lease; the second and third, that in view of the Charter and Administrative Code provisions conferring exclusive jurisdiction over the building in question upon the Department of Marine and Aviation, with whose requirements defendants fully complied, the judgment prayed for by plaintiffs is neither necessary nor appropriate; the fourth, that the application, plans and specifications filed by defendants were made and filed with plaintiffs' knowledge and consent and that plaintiffs knew and agreed that the procedure being followed was that intended under the lease; the fifth, that plaintiffs joined in applications to the Department of Marine and Aviation with full knowledge of the facts pleaded in the complaint, that defendants performed and plaintiffs accepted such performance, whereby the property involved was substantially improved at considerable expense to defendants; and the sixth, that, under the circumstances, to grant the relief requested by plaintiffs would be inequitable. The counterclaim seeks a judgment declaring that defendants have fully complied with the lease and the law.

The reply consists of general and specific denials.

The moving affidavit of one Herbert R. Mandel, husband of plaintiff Miriam Mandel, states in substance as follows: He acted as agent for both plaintiffs in negotiating the lease and in all matters arising thereafter. No plans or specifications were ever exhibited to him in connection with any application to be filed with any municipal department. At various times, forms of applications for permits in connection with the building construction were brought to his home for his wife to sign which he had her do as required by the lease. Plaintiffs did not know or agree that the procedure followed by defendants was so intended by the lease. Attached to that affidavit are copies of five letters, one dated April 24, 1961, in which plaintiffs asked defendants to forward a copy of the final certificate of occupancy; a second dated April 27, 1961, in which defendants enclosed a photostatic copy of the certificate of occupancy issued by the Department of Marine and Aviation; a third dated April 28, 1961, in which plaintiffs insisted upon a certificate of occupancy; a fourth dated May 4, 1961, in which plaintiffs again insisted upon such a certificate; and a fifth dated June 8, 1961,

in which defendants were notified that unless such a certificate were obtained, suit would be commenced.

The supporting affidavit of plaintiffs' attorney consists of a paragraph-by-paragraph summary of the complaint and a demonstration of the alleged frivolity or immateriality of the denials contained in the answer and a like procedure is followed as to the defenses. The stated conclusion is that no issue of fact exists and that the only question to be determined by the court is one of law, to wit, whether defendants were obligated under the lease and the law to proceed through the Department of Housing and Buildings or through the Department of Marine and Aviation.

The affidavit of plaintiff Miriam Mandel corroborates her husband's.

The affidavits submitted in opposition to plaintiffs' motion and in support of defendants' cross motion are many and detailed. They may, perhaps, best be put in proper perspective by quoting the summary of the affidavit of defendants' attorney in his own language:

" In summary, the foregoing presentation sets forth a clear course of administrative procedure as enacted and followed by the municipal departments charged with the regulation of construction in the City of New York. Where such construction is to take place upon what is known as water-front property, the use and occupation of such property is exclusively under the jurisdiction of the Department of Marine and Aviation. The only other municipal department, the Department of Buildings, that could possibly claim jurisdiction over such property, has itself, by long established procedure, recognized the exclusive jurisdiction of the Department of Marine and Aviation.

" Builders, title companies, mortgagees and all those whose business causes them to come under the jurisdiction of the aforesaid municipal departments, have long recognized and relied upon the administrative procedures outlined above, which grant exclusive jurisdiction to the Department of Marine and Aviation over construction on water-front property."

Supporting affidavits are also submitted by defendant Sydney Waxman; one Elliott Saltzman, defendants' architect; one Wilbur A. Leventer, defendants' engineer; and one Philip Weinstein, defendants' construction superintendent.

In his affidavit, Waxman states that he and his brother have been engaged in the construction business for 36 years. Herbert R. Mandel had worked for them for many years and had achieved the position of construction supervisor before he decided to enter business for himself. Defendants' first venture

into the construction of bowling alleys was that known as Seaview Lanes, which was constructed about two and one-half years ago upon property which was also located between a body of water and the first planned street. Mandel was fully aware of that operation and knew that jurisdiction of water front property, such as that involved in this action, rested solely in the Department of Marine and Aviation. Waxman notes that the lease itself makes no reference to the Department of Housing and Buildings and that no specific municipal department was mentioned for the simple reason that there are various such departments whose permission must be obtained for the multiple procedures involved in construction, a matter which is left to the builders' architects and engineers. The lease required the defendants to construct a lawful structure. This, they did. During the construction and actual operation of the building in question, which covered a period of more than a year, the Department of Housing and Buildings was referred to on several occasions for certain subsidiary permits. Not once, however, did that department seek to exercise jurisdiction over the property. Waxman also notes that the policy of title insurance contains the following: "18. The premises, described in Schedule A, front on a body of navigable water. Any building permit may have to be issued by the Department of Marine and Aviation of the City of New York rather than the Building Department."

The architect Saltzman details the steps he took before the parties entered into the lease in question and that as a result of his initial preliminary investigation he concluded that the property was under the jurisdiction of the Department of Marine and Aviation. This conclusion was reached as a result of discussions he had with representatives of that department and of his extensive prior experience. He refers specifically to two similar projects. With reference to one such project, the Seaview Pool and Yacht Club located at Fresh Creek in Brooklyn, he inquired of the Department of Marine and Aviation whether they claimed jurisdiction "over this project with respect to examination of plans for compliance with the New York City Building Code". The reply by a Deputy Commissioner of that department was in pertinent part that "The property in question is waterfront property and, therefore, under the jurisdiction of the Department of Marine and Aviation from whom all construction permits are to be obtained". Saltzman had also been told, informally he admits, over the years by members of the Department of Housing and Buildings in Brooklyn and Queens that it did not and would not assert

jurisdiction over the construction of water front property and that the use and occupancy of such construction was, with minor exceptions, solely under the jurisdiction of the Department of Marine and Aviation. Saltzman then refers to the permits which were obtained from the Department of Marine and Aviation in the construction of the building in question as well as the fact that that department itself required compliance with sections C26–179.0 and C26–187.0 of the Administrative Code relating to the Department of Housing and Buildings before the Department of Marine and Aviation would issue its certificate of completion. He also notes that a public assembly permit was issued by the Department of Housing and Buildings upon his application which showed on its face that the use of the premises had been approved, not by the Department of Housing and Buildings but by the Department of Marine and Aviation.

The affidavit of defendants' engineer, Wilbur A. Leventer, is to the same general effect. He also states that the procedure required in his entire experience and to his knowledge the procedure still in effect in applying to municipal departments for construction permits for water front property is as follows: "When the property involved is wholly located between the water or bulkhead line and the first planned street, the builder files his plans together with his deed or lease with the Department of Marine and Aviation who will then proceed to process the application for a work permit to review the plans. If the Department of Marine and Aviation determines that the property is not wholly waterfront property or there appears to be some special problem concerning the construction or nature of the building to be erected, the Department of Marine and Aviation may refer the builder to the Department of Buildings and require that plans and specifications also be filed with that Department."

Defendants' construction superintendent Weinstein states that on at least three occasions he was at the home of the Mandels for the purpose of obtaining Mrs. Mandel's signature on applications to be filed for permits from the Department of Marine and Aviation in connection with the construction of the building in question. On each of those occasions, Mr. Mandel was present and questioned Weinstein concerning the nature of the applications. It is Weinstein's conclusion that Mandel was at all times aware that plans and specifications had not been filed with the Department of Housing and Buildings and that a certificate of occupancy was not to be requested from that department.

In reply to that detailed, factual, fully documented showing by the defendants, there is submitted a three-page affidavit by plaintiff Miriam Mandel. She states in substance that an application for a building permit with the necessary plans and specifications would have been entertained by the Department of Housing and Buildings had one been submitted to it. In proof thereof, she notes that *plaintiffs* applied to that department for a gasoline service station to be erected on the same premises in 1957, a project which plaintiffs later abandoned. She also states that it is illogical for the Chief Engineer of the Department of Marine and Aviation to state, on the one hand, that that department had jurisdiction over the property and the building constructed thereon and, on the other, to insist upon compliance with sections C26–179.0 and C26–187.0 of the Administrative Code, which sections are part of the Building Code and apply solely to the Department of Housing and Buildings. The affidavits of defendant Sydney Waxman and of defendants' architect and engineer are dismissed as not factual but argumentative and to be treated as such. So, too, are the hearsay opinions of others reported in the answering affidavits.

Before proceeding to a discussion of the pertinent provisions of the Charter, Administrative Code and lease, the court notes its opinion that plaintiffs are not barred from making this collateral attack upon the action of the Department of Marine and Aviation since the basis of that attack is an alleged lack of jurisdiction (see *Matter of Foy* v. *Schechter,* 1 N Y 2d 604, 612). Nor can it be said that they are estopped from attempting, in effect, to void the action of that department. For one thing, the lease did obligate them to co-operate; for another, defendants concede that the lease contemplated the construction of a lawful structure.

The construction of a lawful structure. That was the result intended by the parties. The jurisdictional question presented, therefore, is not necessarily whether the Department of Marine and Aviation had *exclusive* jurisdiction over such construction, but whether it had any jurisdiction.

That question seems not to be determinable by mere inspection of the pertinent statutes. This may be demonstrated by reference to but a few of what the court deems to be the most pertinent provisions of the New York City Charter and Administrative Code. Subdivision b of section 643 of the New York City Charter provides that " The jurisdiction of the department [of Housing and Buildings] shall not extend to water front property owned by the city ". Under subdivision a of section 704 of the Charter the Commissioner of Marine and Aviation is,

except as otherwise provided in the Charter or by statute, granted "exclusive charge and control ＊ ＊ ＊ of the wharf property ＊ ＊ ＊ owned or possessed by the city" and under subdivision c of that section is granted the "exclusive power of regulation over (1) wharf property in the port of New York ＊ ＊ ＊ not owned by the city." The term "water front property" is not defined. The term "wharf property" is defined in section 981 of the Charter as follows: "7. The term 'wharf property' shall mean wharves, piers, docks and bulkheads and structures thereon and slips and basins, the land beneath any of the foregoing, and all rights, privileges and easements appurtenant thereto and land under water in the port of New York, and such upland or made land adjacent thereto as is vested in the department of docks when this charter takes effect or may be assigned to it." (See, also, Administrative Code, § 981–1.0, subd. 17.) When one adds to the foregoing the provisions of paragraph (1) of subdivision b of section 645 of the Charter, vesting in the Commissioner of Buildings "exclusive power ＊ ＊ ＊ (1) to examine and approve or disapprove plans for the construction or alteration of any building or structure", and the provision of subdivision b of section 704c–1.0 of the Administrative Code, pertaining to the Department of Marine and Aviation, that "A written permit shall be obtained from the commissioner before any ＊ ＊ ＊ building ＊ ＊ ＊ may be erected ＊ ＊ ＊ on wharf property", one begins to appreciate why confusion exists as to the department in which jurisdiction is vested in situations such as the one at bar.

That confusion does exist, and has existed for some time, is evidenced by the following language from a leading text (McGoldrick, Building Regulation in New York City [1944], pp. 142, 641) quoted by defendants in their memorandum of law:

"In another respect the Charter has not put finally to rest an old issue of jurisdiction: that over privately owned water-front structures, which ostensibly are regulated by the Commissioner of Aviation and Marine (formerly Docks) although they would seem to fall within the province of the Commissioner of Housing and Buildings.

"It is not apparent that the authors of the Charter gave any thought to structures on privately owned water-front property. The Department of Marine and Aviation (heretofore known as the Department of Docks) has assumed exclusive jurisdiction for many years."

It seems reasonable to conclude, therefore, that the pertinent provisions of the Charter and Administrative Code are of doubtful meaning so far as the jurisdictional question here presented

is concerned. Such being the case, the court must look elsewhere for assistance in determining the question. It has often been held that " in determining the doubtful meaning of a statute the courts will accord great weight to a practical construction placed upon it by the officers charged with its enforcement, particularly where such construction is long continued   *   *   *.   Where a statute is ambiguous or of doubtful meaning a construction of such statute by an administrative agency charged with its enforcement or administration, especially if contemporaneous, long continued and uniform, or acquiesced in by the persons affected, may not be ignored, and should not be lightly disregarded.   *   *   *   Such an administrative construction will not be disturbed except for cogent reasons." (1 N. Y. Jur., Administrative Law, § 89, pp. 427–430 and cases cited.)

" The only Departmental Regulation bearing upon the subject ", state the defendants in their memorandum of law, " was found in the Regulations of the Department of Marine and Aviation Regulations (ch. 12 — Cumulative Compilation of the Rules and Regulations of New York City Agencies — 1938–1946):

" ' 2. Construction or alteration of waterfront structures —

" ' No pier, bulkhead, building or other.structures may be built upon waterfront property within the City of New York, whether owned by the City of New York or privately owned, without written permission of the Commissioner of Marine and Aviation, nor may any alteration be made to any such existing structure without like permission.' "

When that regulation is read with the other substantial proof that defendants have submitted, the conclusion seems inescapable that the practical construction placed upon the pertinent provisions of the Charter and Administrative Code vested jurisdiction in the Department of Marine and Aviation upon all water front property, whether privately or city owned.

Supporting that conclusion, by implication, are the proposed amendments to the Charter and Administrative Code, a copy of which is annexed to the affidavit of defendants' attorney and discussed at pages 13 to 17, inclusive, of their memorandum of law. Pertinently, the proposed amendments would add to subdivision 7 of section 981 of the Charter a definition of water front property. Subdivision b of section 643 of the Charter would withhold jurisdiction from the Department of Housing and Buildings over water front property owned by the city or specified structures on " any water front property " or " to such other structures used in conjunction with and in furtherance of water front commerce and/or navigation ". Of special significance are the following two proposed amendments to

sections C26–6.0 and C26–184.0 of the Administrative Code (underscoring has been omitted):

"§ C26–6.0 Exemption from this title. * * * Structures on any water front property not used in conjunction with and in furtherance of water front commerce and/or navigation may be constructed or altered in accordance with the requirements of the commissioner of marine and aviation provided plans have been filed with and approved by the department of marine and aviation and an application for a permit in connection therewith has been made to such commissioner before the fifteenth day of October nineteen hundred sixty-one, and provided further that substantial work on the construction or alteration shall have been done within one year after the permit therefor has been issued, and provided further that all of the work shall have been completed within two years from the date of the issuance of such permit." * * *

"§ C26–184.0 Occupancy of existing structures. * * * The occupancy and use of any structure on water front property not used in conjunction with and in furtherance of water front commerce and/or navigation, and for which a certificate of compliance has been or is issued pursuant to law by the commissioner of marine and aviation, may continue. The commissioner of buildings shall honor such certificates of compliance for the uses and purposes certified to therein."

If they do no more, the proposed amendments just quoted implicitly acknowledge that jurisdiction has been exercised by the Department of Marine and Aviation over privately owned as well as city owned water front property. As previously noted, such exercise of jurisdiction has been long continued, relied upon by many at great expense and acquiesced in by the Department of Housing and Buildings. To hold now that all such action taken by the Department of Marine and Aviation would, except for amendments which may never be adopted, be void for lack of jurisdiction would be not only to reach a result of questionable soundness from the standpoint of statutory construction but also to reach a result of unquestionable unsoundness from the standpoint of the practical consequences which would follow.

Finally, had there been no doubt in the minds of the parties as to the department having jurisdiction to issue a building permit and certificate of occupancy for the structure the defendants undertook to build, it seems reasonable to assume that such department would have been specifically named in the lease. But this was not done. Where issuance of a certificate of occupancy is mentioned, reference is to the "appropriate" municipal department (§ 4.01) or to the municipal agency "having

jurisdiction thereover " (§ 30.01 [c]). Indeed, section 14.01 of the lease provides that the " Tenant will not use or allow the Demised Premises or any part thereof to be used or occupied for any unlawful purpose or in violation of any *certificate of occupancy or certificate of compliance* covering or affecting the use of the Demised Premises or any part thereof " (emphasis supplied). The " Certificate of Completion " issued by the Department of Marine and Aviation, a certificate which expressly permits defendants " to *occupy* said structure for the *use* of bowling alley and accessory restaurant " (emphasis supplied), is equivalent to " a certificate of occupancy or certificate of compliance ", is valid under the law and constitutes the performance with respect thereto required of defendants under the lease.

Since no genuine, triable issue of fact has been shown to exist, plaintiffs' motion for summary judgment is denied and defendants' cross motion for summary judgment is granted.